| | |
|---|---|
| Zhejiang Medicine Co., Ltd., and ZMC-USA L.L.C., | ) ) ) ) Civil Action No. 4:11-cv-1052 (VDG) |
| Plaintiffs, | ) ) |
| v. | ) JURY TRIAL DEMANDED ) |
| Kaneka Corporation, | ) ) |
| Defendant. | ) ) ) ) |

## FIRST AMENDED COMPLAINT

Plaintiffs Zhejiang Medicine Co., Ltd. and ZMC-USA L.L.C., for their Amended Complaint against Defendant, Kaneka Corporation, allege as follows:

### NATURE OF THE ACTION

1.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States of America, 35 U.S.C. § 101, *et seq.*, the Sherman Act, 15 U.S.C. § 2, and the Lanham Act, 15 U.S.C. § 1125.

### THE PARTIES

2.     Plaintiff Zhejiang Medicine Co., Ltd. ("ZMC") is a Chinese corporation having a principal place of business at No. 268 Dengyun Rd., Hangzhou, Zhejiang, China. As part of its business, ZMC is involved in the research, development and manufacturing of pharmaceutical and nutritional ingredients and products, including coenzyme Q10 ("CoQ10").

3.     Plaintiff ZMC-USA L.L.C. ("ZMC-USA") is a Texas limited liability company having a principal place of business at 1776 Woodstead Court, Suite 215, The Woodlands, Texas

77380-1480. As part of its business, ZMC-USA is involved in the marketing and sale of pharmaceutical and nutritional ingredients and products, including CoQ10.

4. On information and belief, Defendant Kaneka Corporation ("Kaneka") is a Japanese corporation having a principal place of business at 3-2-4, Nakanoshima, Kita-ku, Osaka, 530-8288, Japan. Kaneka is engaged in the research, development, marketing, and sale of pharmaceutical and nutritional ingredients and products, including CoQ10.

## JURISDICTION AND VENUE

5. This is a civil action regarding: (1) patent infringement, patent invalidity and patent unenforceability arising under the patent laws of the United States, Title 35 of the United States Code, for which Plaintiffs ZMC and ZMC-USA seek declaratory relief under the Declaratory Judgment Act; (2) antitrust violations, for which Plaintiffs seek treble damages and other relief under the Sherman Act, 15 U.S.C. § 2; (3) unfair competition, for which Plaintiffs seek damages and other relief under the Lanham Act, 15 U.S.C. § 1125; and (4) various state law claims that are so related to Plaintiffs' federal law claims that they form part of the same case or controversy as Plaintiffs' federal law claims. Thus, this Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201 and 2202.

6. An actual controversy exists between Plaintiffs on the one hand and Defendant on the other concerning CoQ10. Plaintiffs contend that they have the right to make, use, have made, sell, offer for sale and import CoQ10 without license from Kaneka. Kaneka has alleged that Plaintiffs infringe U.S. Patent No. 7,910,340 (the "'340 Patent"). Plaintiffs filed their original complaint in this action after the '340 patent issued. Therefore, this Complaint presents a justiciable case or controversy.

7. This Court has personal jurisdiction over Kaneka. Kaneka has consented to jurisdiction in the Southern District of Texas for the adjudication of disputes with Plaintiffs

regarding the '340 patent and its claim that Plaintiffs have infringed its patent. This case is directly related to Case No. 4:11-cv-2250, which was pending before Judge Hughes in this Court before it was dismissed by Kaneka. In addition, Kaneka conducts business, including selling products for distribution within the state of Texas and within this judicial district. On information and belief, Kaneka, directly or through intermediaries (including affiliates, distributors, retailers, and others), manufactures, ships, distributes, offers for sale, sells, markets, promotes and advertises its products in the state of Texas and within this judicial district. Furthermore, on information and belief, Kaneka's products regularly enter the stream of commerce in the state of Texas and this judicial district. As a result, Kaneka purposefully avails itself of the privilege of doing business in the Southern District of Texas. Moreover, by doing business in the Southern District of Texas, Kaneka avails itself of the protections of the Southern District of Texas and, in turn, consents to jurisdiction in the Southern District of Texas.

8. Venue is proper in this district, *inter alia*, pursuant to 28 U.S.C. §§ 1391 and 1400.

## STATEMENT OF FACTS

9. Kaneka is the owner of several U.S. and foreign patents relating generally to the manufacture of CoQ10. In 2009, Kaneka sued manufacturers of reduced CoQ10 in the Central District of California claiming infringement of a patent related generally to a reduced form of CoQ10 known as ubiquinol.

10. On or about October 28, 2010, Kaneka filed legal proceedings seeking damages and injunctive relief in the Düsseldorf Regional Court of Germany against ZMC and its distributor, Kyowa Hakko – Europe, claiming patent infringement relating to European patent number 1,466,983.

11.    European patent number 1,466,983 is a foreign counterpart to the '340 patent.

12.    According to a press release dated October 29, 2010 issued by Kaneka and posted on its website, Kaneka "has instituted further steps in its existing patent enforcement programme to enforce its proprietary rights in those countries in which its patents relating to coenzyme Q10 are in force. An objective of this programme is to protect Kaneka's intellectual property rights in its coenzyme Q10 products."

13.    The press release dated October 29, 2010 further quotes Mr. Yoshimi Uchida, General Manager of the QOL Division at Kaneka, as stating, "We will vigorously defend these rights [relating to CoQ10] and immediately initiate court proceedings to enforce our intellectual property rights. We are taking these steps to protect the results of our research and development and to avoid the unlawful use of Kaneka's innovations."

14.    On March 22, 2011, at midnight Eastern Daylight Time, the United States Patent and Trademark Office ("USPTO") issued the '340 patent, which is entitled "Processes for Improving Coenzyme Q10," to Kaneka, ,which on information and belief, is the assignee of the named inventors, Kazuyoshi Yajima, Takahisa Kato, Akihisa Kanda, Shiro Kitamura, and Yasuyoshi Ueda.

15.    On March 22, 2011, Kaneka filed suit in the Central District of California against Plaintiffs and other manufacturers and sellers of CoQ10, claiming infringement of the '340 patent. That case was later transferred to this Court and assigned Case No. 4:11-cv-2250 before Judge Hughes.

16.    There are several manufacturing processes to produce CoQ10. The claims of the '340 patent cover specific manufacturing processes for making oxidized CoQ10.

17. ZMC does not practice any of the specific methods for manufacturing CoQ10 that are claimed by the '340 patent. On information and belief, oxidized CoQ10 has been commercially available in the United States since at least 1990 and was sold by several companies, including Kaneka and Mitsubishi, well before the priority date of the '340 patent.

18. Kaneka filed the lawsuits in Germany and California alleging infringement against Plaintiffs without any knowledge of the details of ZMC's actual manufacturing process. Furthermore, prior to filing the lawsuits in Germany and California, Kaneka never attempted to contact Plaintiffs to request information regarding ZMC's manufacturing process.

19. Kaneka's lawsuit is objectively baseless, in the sense that no reasonable litigant could take the position that Kaneka has taken and have an expectation of winning. In particular, it is baseless for Kaneka to claim that ZMC's manufacturing process infringes any of the claims of the '340 patent and that it differs from that of the prior art. The reason that Kaneka filed this lawsuit was to intimidate Plaintiffs and to discourage customers and potential customers from buying CoQ10 from Plaintiffs. Kaneka's further goal was to impose costs on Plaintiffs and tarnish their reputation, interfering with their customer relationships and causing Plaintiffs to cease producing and selling their non-infringing CoQ10.

20. On June 17, 2011, Kaneka filed a Complaint with the U.S. International Trade Commission asserting that Plaintiffs import and sell CoQ10 products that are made by a process covered by the '340 patent. Kaneka filed this lawsuit knowing that it could not win on the merits. Instead, Kaneka filed the lawsuit in order to distract Plaintiffs and drive up Plaintiffs' costs, and in the hopes of forcing Plaintiffs into a settlement in which Plaintiffs would stay off the market for some period of time.

21.     Despite knowing that it had no evidence that Plaintiffs were infringing its patent, Kaneka, through its counsel, Dariush Adli, sent mass mailings to the trade, including Plaintiffs' customers and potential customers, on or about June 17, 2011, June 20, 2011 and July 18, 2011, publicly asserting that Plaintiffs infringe Kaneka's patent (hereinafter the "Customer Letters"). The letters were sent in bad faith, as Kaneka had no reasonable basis for alleging that Plaintiffs infringed the '340 patent. Plaintiffs are presently aware of at least 219 Customer Letters.

22.     In one version of a Customer Letter, sent on or about June 17 or 20, 2011, shortly after filing the ITC complaint, Adli states that: (1) "[t]he lawsuit has been filed with the U.S. International Trade Commission (ITC) against Defendants, who import and sell Coenzyme Q10 products that directly and/or indirectly infringe [the '340 patent];" (2) "Kaneka expects that once the ITC investigation is instituted, a trial will be held by May 2012. Kaneka is also currently investigating the use of these infringing Coenzyme Q10 products in consumer products such as dietary supplements, cosmetics, oral care products, and beverages;" and (3) "Kaneka advises that [the recipient] take all necessary measure to avoid expansion of the infringing activities in the U.S. by selling or using infringing products that are manufactured or distributed by Defendants."

23.     In another version of a Customer Letter sent on or about June 17 or 20, 2011, Adli adds that "[i]t has come to our attention that [the recipient] has been purchasing, using, or considering the purchase or use of Coenzyme Q10 products from Defendant that fall within the scope of the Kaneka Patent. Such products include Coenzyme Q10 bulk powder and Coenzyme Q10 emulsified powder, which Defendants are not authorized to manufacture, import, distribute, or sell in the U.S."

24. On July 14, 2011, the ITC instituted an investigation in response to Kaneka's Complaint. As noted in its press release, the ITC, by instituting the investigation, did not make any decisions on the merits of the case.

25. Despite the fact that the ITC had not yet made any determination on the merits of Kaneka's claims, on or about July 18, 2011, shortly after the ITC instituted the investigation, Adli sent another version of a Customer Letter, adding that "[b]ased on the strength of Kaneka's complaint, the ITC has decided to commence an investigation into Defendants' use of the Kaneka patent and will be considering Kaneka's request for an Exclusion Order."

26. Upon information and belief, Adli sent one or more versions of a Customer Letter to at least one hundred fifty six of Plaintiffs' customers, potential customers, and members of the trade.

27. As a result of these Customer Letters, some of Plaintiffs' customers and potential customers have refused to purchase products from Plaintiffs and/or threatened to cease purchasing products from Plaintiffs.

28. On information and belief, as Kaneka's attorney in Kaneka's lawsuits and ITC investigation against Plaintiffs, Adli was acting as Kaneka's agent and within the scope of his authority when sending out the Customer Letters.

29. Because Kaneka had no evidence of infringement and no basis upon which to claim that ZMC's manufacturing process differs from that of the prior art, Kaneka filed its complaint in the ITC investigation and (through Adli as Kaneka's agent) sent the Customer Letters in bad faith, without regard for the merits of its infringement claim or a reasonable belief that it may succeed on its infringement claim. Furthermore, Kaneka acted with a reckless disregard for whether Plaintiffs did or did not infringe the '340 patent. No reasonable

investigation of Kaneka's purported claims against Plaintiffs could have led to a conclusion that Plaintiffs infringed the '340 patent.

30.     On August 22, 2011, after a conference in chambers in which Kaneka's counsel participated, Judge Hughes ordered Kaneka to withdraw the Customer Letters.

31.     On August 26, 2011,  Plaintiffs provided Kaneka's counsel with a detailed description of ZMC's manufacturing process that demonstrated that ZMC's process is not covered by the '340 patent, and that the process merely practices the prior art.

32.     Despite knowledge that Plaintiffs' process is not covered by the '340 patent, Kaneka has refused to retract its public assertions that ZMC's process infringes  the '340 patent. Furthermore, Kaneka failed to comply with Judge Hughes's court order in Case No. 4:11-cv-2250 and to date  has not retracted any of the Customer Letters, nor has it requested dismissal of the ITC investigation as to the Plaintiffs.  Kaneka's failure to comply with the Court's order and to request dismissal of the ITC investigation was not inadvertent or accidental.  Kaneka made a deliberate decision not to retract the Customer Letters or seek dismissal of the ITC investigation.

33.     On August 25, 2011, Kaneka dismissed Case No. 4:11-cv-2250 without prejudice in order to avoid having to appear at a hearing to show cause why it should not be found in contempt, which was scheduled to take place the next day, on August 26.

34.     Kaneka filed the ITC complaint and sent the Customer Letters  in bad faith and for the improper purpose of interfering directly with Plaintiffs' business relationships through the use of an anticompetitive weapon, as further evidenced by Kaneka's failure to withdraw the Customer Letters and its continuing maintenance of the ITC investigation.

35.     Kaneka's conduct as described above has caused severe damage to Plaintiffs' business, including loss of sales of CoQ10 and other products, lost business opportunities,

damage to Plaintiffs' goodwill with customers and potential customers, damage to Plaintiffs' reputation in the marketplace, and disruption of their businesses.

**KANEKA'S MARKET POWER**

36.   For antitrust purposes, the relevant product market is the market for oxidized CoQ10 products, and the relevant geographic market is the United States. (The relevant product market and the relevant geographic market are collectively referred to herein as the "relevant product market.")  A second antitrust market is the market for the technology necessary to create oxidized CoQ10 products ("relevant technology market"), and the relevant geographic market is worldwide.

37.   In the ITC investigation, Kaneka has named the majority of oxidized coenzyme Q10 manufacturers, representing on information and belief in excess of 99% of all non-Kaneka manufactured coenzyme Q10.  Kaneka has sent Customer Letters to a large number of these manufacturers' current and former customers.

38.   Kaneka has monopoly power and the ability to exclude competition from the relevant product market and/or technology market or, at a minimum, a dangerous probability of achieving monopoly power and the ability to exclude competition.  It has achieved, or has a dangerous probability of achieving, this monopoly power by improperly instituting baseless patent litigation in the U.S. and elsewhere.  By instituting baseless patent litigation, Kaneka is able to raise the cost for other oxidized coenzyme Q10 products.  Kaneka's baseless litigation also provides Kaneka with the opportunity to achieve a nuisance settlement with one or more competitors, having these competitors stay off the market for a period of time.

39.   Kaneka also has achieved, or has a dangerous probability of achieving, this monopoly power by employing a campaign to mislead customers into believing that Plaintiffs

infringe Kaneka's intellectual property, and intimidating them by raising the potential that the customers may be subject to legal action and facing product recalls for selling or distributing an infringing product. Kaneka's campaign has caused, or has a dangerous probability of causing, customers to avoid buying competing oxidized coenzyme Q10 products. By choking off opportunities for producers who use non-infringing technologies, a key input to manufacturing oxidized CoQ10 products, Kaneka has a dangerous probability of inhibiting innovation and forcing non-competing technologies from the market.

40. Despite the fact that the '340 patent covers only specific manufacturing processes for producing coenzyme Q10, any company seeking to enter the relevant product and technology markets faces a threat of legal action from Kaneka—regardless of whether or not it uses the processes covered by the '340 patent in manufacturing coenzyme Q10. As a result, Kaneka has sought to expand the scope of its patent by making claims against technologies it knows are not infringing, and by forcing manufacturers to accept a license for its technology without regard to whether they actually infringe.

41. Kaneka was indifferent to the outcome of the litigation on the merits. By filing its lawsuit, and using it as a basis to send defamatory letters to customers and raise its competitors' costs, Kaneka achieved its objective. Indeed, Kaneka's primary motive in suing Plaintiffs was to reap the collateral benefits that the lawsuit would bring, including the ability to intimidate and mislead customers to cause them not to deal with Plaintiffs and other competitors.

42. Kaneka filed the California complaint, filed the ITC complaint, asserted counterclaims in this action, and sent the Customer Letters, in bad faith, knowing that they were baseless and with a specific intent and purpose of monopolizing the market for oxidized CoQ10 in the United States.

43.     Plaintiffs are direct competitors to Kaneka in the United States.

## FIRST CAUSE OF ACTION

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,910,340

44.     Plaintiffs incorporate by reference paragraphs 1 through 43 as though fully stated herein.

45.     There is an actual controversy between ZMC and ZMC-USA on the one hand, and Defendant Kaneka on the other, as to whether Plaintiffs infringe any valid and enforceable claim of the '340 patent.

46.     Plaintiffs have not infringed and do not infringe any valid and enforceable claim of the '340 patent.

47.     Accordingly, Plaintiffs seek a judgment declaring that they do not infringe and have not infringed, directly or indirectly, contributorily or by inducement, any claim of the '340 patent.

## SECOND CAUSE OF ACTION

### DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF U.S. PATENT NO. 7,910,340

48.     Plaintiffs incorporate by reference paragraphs 1 through 47 as though fully stated herein.

49.     There is an actual controversy between ZMC and ZMC-USA on the one hand, and Defendant Kaneka on the other, as to the invalidity and enforceability of the '340 patent.

50.     The '340 patent is invalid for failure to comply with one or more of the requirements of patentability set forth in Title 35 of the United States Code or the rules, regulations and laws related thereto, including without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112.

51.     Accordingly, Plaintiffs seek a judgment declaring that the claims of the '340 patent are invalid, unenforceable, void and of no legal consequence.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 2

52.     Plaintiffs incorporate by reference paragraphs 1 through 51 as though fully stated herein.

53.     Kaneka filed the objectively baseless ITC complaint and sent objectively baseless Customer Letters with the knowledge that they were baseless and with the subjective intent of interfering with Plaintiffs' business relationships. Kaneka knows it has no reasonable possibility of succeeding on the merits, and instead is intentionally abusing government processes in order to maintain its monopoly, monopolize, and/or attempt to monopolize the relevant product market and relevant technology market.

54.     Kaneka has no basis upon which to claim that ZMC's manufacturing process is infringing or differs from that of the prior art.

55.     Despite this, Kaneka filed the California and ITC complaints, asserted counterclaims for infringement in this action, sent Customer Letters, failed to seek dismissal of the ITC investigation, and intentionally refused to comply with a Court order to retract the Customer Letters, in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

56.     Kaneka's conduct constitutes illegal, unfair, predatory conduct calculated to prevent competition in the relevant product and technology markets. Through this conduct, Kaneka has achieved, and/or there is a dangerous probability of Kaneka achieving, a monopoly in the relevant product and technology markets.

57. The unlawful activities alleged above constitute monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

58. Kaneka's conduct has harmed and continues to harm competition in the relevant product and technology markets and consumers thereof.

59. Kaneka's conduct has harmed and continues to harm Plaintiffs by reducing Plaintiffs' sales in the relevant product and technology markets, damaging Plaintiffs' goodwill, reducing Plaintiffs' other sales, and subjecting Plaintiffs to unnecessary legal fees and expenses.

60. Kaneka's conduct constitutes an effort to extend the scope of the '340 patent beyond the grant issued by the Patent Office.

61. The injury Plaintiffs have suffered as a result of Kaneka's monopolization and attempt to monopolize constitutes antitrust injury, for which Plaintiffs are entitled to recover treble the damages that they have sustained.

## FOURTH CAUSE OF ACTION

## VIOLATION OF TEXAS BUSINESS & COMMERCIAL CODE § 15.05(B)

62. Plaintiffs incorporate by reference paragraphs 1 through 61 as though fully stated herein.

63. Kaneka's conduct constitutes illegal, unfair, predatory conduct calculated to prevent competition in the relevant product and technology markets in violation of Texas Business & Commercial Code § 15.05(b). The unlawful activities alleged above constitute monopolization and/or attempted monopolization in violation of Texas Business & Commercial Code § 15.05(b).

64. Kaneka's conduct has harmed and continues to harm competition in the relevant product and technology markets and consumers thereof.

65. Kaneka's conduct has harmed and continues to harm Plaintiffs, reducing Plaintiffs' sales in the relevant product and technology markets, damaging Plaintiffs' goodwill, reducing Plaintiffs' sales of products other than CoQ10, and subjecting Plaintiffs to unnecessary legal fees and expenses.

66. The injury Plaintiffs have suffered as a result of Kaneka's monopolization and attempt to monopolize constitutes antitrust injury, for which Plaintiffs are entitled to recover treble the damages that they have sustained.

## FIFTH CAUSE OF ACTION

### PATENT MISUSE

67. Plaintiffs incorporate by reference paragraphs 1 through 66 as though fully stated herein.

68. Kaneka filed the objectively baseless ITC complaint and sent objectively baseless Customer Letters with the knowledge that they were baseless and with the subjective intent of interfering with Plaintiffs' business relationships. Kaneka knows it has no reasonable possibility of succeeding on the merits, and instead is intentionally abusing government processes in order to maintain its monopoly, monopolize, and/or attempt to monopolize the relevant product market and relevant technology market.

69. Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless ITC complaint and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art.

70. Despite this lack of knowledge, Kaneka filed the California and ITC complaints, asserted counterclaims for infringement in this action, sent Customer Letters, failed to seek dismissal of the ITC investigation, and intentionally refused to comply with a court order to retract the Customer Letters, in bad faith and for the improper purpose of interfering with

14

Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

71.     By asserting that Plaintiffs infringe the '340 patent in the California and ITC complaints and in this action, and in Customer Letters, without any good faith factual basis, Kaneka has impermissibly broadened the physical scope of the '340 patent grant with an anticompetitive effect.

72.     Plaintiffs are entitled to a declaration that the '340 patent is unenforceable as a result of Kaneka's patent misuse.

## SIXTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

73.     Plaintiffs incorporate by reference paragraphs 1 through 72 as though fully stated herein.

74.     Because ZMC manufactures and sells quality products at competitive prices, there is a reasonable probability that had Kaneka not filed the California and ITC Complaints and/or counterclaimed for infringement in this action and/or sent the Customer Letters, Plaintiffs' current and/or prospective customers would have purchased oxidized CoQ10 from Plaintiffs.

75.     As set forth above, Kaneka has engaged in unfair and anti-competitive practices, including violation of antitrust law.   Specifically, Kaneka filed the California and ITC Complaints, asserted counterclaims for infringement in this action, and sent the Customer Letters without a good faith belief of infringement.   Kaneka did not properly investigate Plaintiffs' manufacturing processes in order to assess infringement prior to filing the California and ITC Complaints, asserting counterclaims in this action or sending the Customer Letters. Furthermore, after Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the

Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. All of these actions were in furtherance of a strategy designed to allow Kaneka to monopolize the relevant product and technology markets in violation of antitrust law.

76.     Kaneka's conduct was unlawful because, *inter alia*, it violates federal and state antitrust laws, unfair competition laws, defamation laws and/or false advertising laws.

77.     Upon information and belief, Kaneka acted in bad faith and with a conscious desire to prevent Plaintiffs' customers and/or potential customers from purchasing CoQ10 from Plaintiffs and/or with the knowledge that customers and/or potential customers were certain or substantially certain to refuse to purchase CoQ10 products from Plaintiffs as a result of Kaneka's conduct.

78.     Plaintiffs have suffered actual harm or damages as a result of this interference, including but not limited to lost sales of CoQ10 and other products and damage to Plaintiffs' goodwill and reputation.

### SEVENTH CAUSE OF ACTION

**TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONSHIPS**

79.     Plaintiffs incorporate by reference paragraphs 1 through 78 as though fully stated herein.

80.     Kaneka sent Customer Letters to numerous customers who have purchased oxidized CoQ10 from Plaintiffs.

81.     As set forth above, Kaneka has engaged in unfair and anti-competitive practices, including violation of antitrust law.  Specifically, Kaneka has filed the California and ITC Complaints, asserted counterclaims for infringement in this action, and sent the Customer Letters in bad faith and without any reasonable basis to believe that Plaintiffs were infringing the '340 patent.  Kaneka did not properly investigate Plaintiffs' manufacturing processes in order to allege

infringement prior to filing the California and ITC Complaints, asserting counterclaims in this action, or sending the Customer Letters. Moreover, after Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. All of these actions were in furtherance of a strategy designed to allow Kaneka to monopolize the relevant product and technology markets in violation of antitrust law.

82.    Kaneka's conduct was unlawful because, *inter alia*, it violates federal and state antitrust laws, unfair competition laws, defamation laws and/or false advertising laws.

83.    Upon information and belief, Kaneka acted in bad faith and with a conscious desire to prevent Plaintiffs' customers from purchasing CoQ10 from Plaintiffs and/or with the knowledge that customers were certain or substantially certain to refuse to purchase CoQ10 products from Plaintiffs as a result of Kaneka's conduct.

84.    Plaintiffs have suffered actual harm or damages as a result of this interference, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

### EIGHTH CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACT

85.    Plaintiffs  incorporate by reference paragraphs 1 through 84 as though fully stated herein.

86.    Kaneka sent Customer Letters to numerous customers who have contracts to purchase oxidized CoQ10 from Plaintiffs.

87.    As set forth above, Kaneka has engaged in unfair and anti-competitive practices, including violation of antitrust law.  Specifically, Kaneka has filed the California and ITC Complaints, asserted counterclaims for infringement in this action, and sent the Customer Letters

in bad faith and without any reasonable basis to believe that Plaintiffs were infringing the '340 patent. Moreover, Kaneka did not properly investigate Plaintiffs' manufacturing processes in order to assess infringement prior to filing the California or ITC Complaints, asserting counterclaims for infringement in this action, or sending the Customer Letters. After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. All of these actions were in furtherance of a strategy designed to allow Kaneka to monopolize the relevant product and technology markets in violation of antitrust law.

88.  Kaneka's conduct was unlawful because, *inter alia*, it violates federal and state antitrust laws, unfair competition laws, defamation laws and/or false advertising laws.

89.  Upon information and belief, Kaneka acted in bad faith and with a conscious desire to prevent Plaintiffs' customers from purchasing CoQ10 from Plaintiffs and/or with the knowledge that customers were certain or substantially certain to refuse to purchase CoQ10 products from Plaintiffs as a result of Kaneka's conduct.

90.  Kaneka's actions caused customers who had contracts to purchase CoQ10 from Plaintiffs to cancel their contracts or threaten cancellation of their contracts.

91.  Plaintiffs have suffered actual harm or damages as a result of this interference, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## NINTH CAUSE OF ACTION

## UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(B)

92.     Plaintiffs incorporate by reference paragraphs 1 through 91 as though fully stated herein.

93.     In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This statement is false because Plaintiffs do not infringe the '340 patent.

94.     In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to Plaintiffs' customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

95.     In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This statement is false because by instituting the investigation, the ITC does not make any decision on the merits of the case.

96.     Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

97.     After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters, despite its knowledge that Plaintiffs do not infringe the '340 patent. Accordingly, Kaneka has knowingly and in bad faith disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

98.     Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

99.     Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

100.    The statements set forth above deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012.

101.    Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

102.    Kaneka's deception is likely to influence Plaintiffs' customers or potential customers not to purchase products from Plaintiffs.

103.    Kaneka caused the Customer Letters to enter interstate commerce by sending them to customers and/or potential customers in the United States.

104.    Plaintiffs have suffered actual harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## TENTH CAUSE OF ACTION

## FALSE ADVERTISING UNDER THE TEXAS OCCUPATIONS CODE § 101.201

105. Plaintiffs incorporate by reference paragraphs 1 through 104 as though fully stated herein.

106. In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This statement is a material misrepresentation of fact because Plaintiffs do not infringe the '340 patent.

107. In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to ZMC-USA's customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

108. In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This statement is a material misrepresentation of fact because by instituting the investigation, the ITC does not make any decision on the merits of the case.

109. Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement in this action, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

110. After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters, despite its knowledge that Plaintiffs do not infringe the '340 patent.

Accordingly, Kaneka has knowingly disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

111.    Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

112.    Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

113.    The statements deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012.

114.    Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

115.    Kaneka's deception is likely to influence Plaintiffs' customers or potential customers not to purchase products from Plaintiffs.

116.    Kaneka caused the letters to enter interstate commerce by sending them to customers and/or potential customers in the United States.

117.    Plaintiffs have suffered actual harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## ELEVENTH CAUSE OF ACTION

### PRODUCT DISPARAGEMENT

118. Plaintiffs incorporate by reference paragraphs 1 through 117 as though fully stated herein.

119. In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This is a false statement about Plaintiffs' CoQ10 products because Plaintiffs' products do not infringe the '340 patent.

120. In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to ZMC-USA's customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

121. In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This statement is false because by instituting the investigation, the ITC does not make any decision on the merits of the case.

122. Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

123. After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. Accordingly, Kaneka has knowingly disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

124.     Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

125.     Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

126.     The statements deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012.

127.     Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

128.     This deception is likely to influence Plaintiffs' customers or potential customers not to purchase products from Plaintiffs.

129.     Kaneka caused the letters to enter interstate commerce by sending them to customers and/or potential customers in the United States.

130.     Plaintiffs have suffered pecuniary harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## TWELFTH CAUSE OF ACTION

### BUSINESS DISPARAGEMENT

131.     Plaintiffs incorporate by reference paragraphs 1 through 130 as though fully stated herein.

132. In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This is a false statement about Plaintiffs' business because Plaintiffs' products do not infringe the '340 patent.

133. In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to ZMC-USA's customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

134. In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This statement is false because by instituting the investigation, the ITC does not make any decision on the merits of the case.

135. Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

136. After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. Accordingly, Kaneka has knowingly disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

137. Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

138. Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

139. The statements deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012.

140. Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

141. This deception is likely to influence Plaintiffs' customers or potential customers not to purchase products from Plaintiffs.

142. Kaneka caused the letters to enter interstate commerce by sending them to customers and/or potential customers in the United States.

143. Plaintiffs have suffered pecuniary harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## THIRTEENTH CAUSE OF ACTION

### DEFAMATION: LIBEL

144. Plaintiffs incorporate by reference paragraphs 1 through 143 as though fully stated herein.

145.     In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This is a false, defamatory statement because Plaintiffs do not infringe the '340 patent.

146.     In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to ZMC-USA's customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

147.     In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This is a false, defamatory statement because by instituting the investigation, the ITC does not make any decision on the merits of the case.

148.     Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

149.     After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. Accordingly, Kaneka has knowingly disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

150.    Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

151.    Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

152.    The statements deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012, thereby injuring ZMC's reputation.

153.    Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

154.    Kaneka's statements have exposed Plaintiffs to financial injury and have impeached Plaintiffs' honesty, integrity, virtue, and/or reputation

155.    Plaintiffs have suffered actual harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## FOURTEENTH CAUSE OF ACTION

### LIBEL *PER SE*

156.    Plaintiffs incorporate by reference paragraphs 1 through 155 as though fully stated herein.

157.     In the Customer Letters, Kaneka stated that Plaintiffs' CoQ10 products infringe the '340 patent. This is a false, defamatory statement because Plaintiffs do not infringe the '340 patent.

158.     In the Customer Letters, Kaneka stated that trial in the ITC Investigation would be complete by May 2012. This statement is intentionally deceptive or misleading, because it implies to ZMC-USA's customers that products would be subject to recall or seizure by May 2012. In fact, a final Commission decision is unlikely before November 2012 and the ITC has no authority to recall or seize products in the possession of third parties.

159.     In certain Customer Letters, Kaneka stated that the ITC instituted the investigation based on the strength of Kaneka's Complaint. This is a false, defamatory statement because by instituting the investigation, the ITC does not make any decision on the merits of the case.

160.     Kaneka had no knowledge of ZMC's manufacturing process when it filed the baseless California and ITC complaints, asserted baseless counterclaims for infringement, and sent baseless Customer Letters. Kaneka has no basis upon which to claim that ZMC's manufacturing process infringes or differs from that of the prior art. Accordingly, Kaneka made these statements in bad faith and with reckless disregard as to whether they were true.

161.     After Kaneka learned that Plaintiffs do not infringe the '340 patent, Kaneka intentionally failed to seek dismissal of the ITC investigation and refused to withdraw the Customer Letters despite its knowledge that Plaintiffs do not infringe the '340 patent. Accordingly, Kaneka has knowingly disseminated false statements in the marketplace regarding Plaintiffs' alleged infringement of the '340 patent.

162. Upon information and belief, Kaneka knew that its statement that trial in the ITC investigation would be complete by May 2012 was deceptive or misleading.

163. Upon information and belief, Kaneka knew that its statement that the ITC instituted the investigation based on the strength of Kaneka's complaint was false, because Kaneka knew that by instituting the investigation, the ITC did not make any decision on the merits of the case.

164. The statements deceived or have a tendency to deceive Plaintiffs' customers and/or potential customers into believing that Plaintiffs infringe the '340 patent, that the ITC believes that Kaneka's complaint that Plaintiffs infringe the '340 patent is strong, and that the ITC could recall or seize products in the possession of third parties sold by ZMC by May 2012, thereby injuring ZMC's reputation.

165. Kaneka made these false and/or deceptive statements in bad faith and for the improper purpose of interfering with Plaintiffs' existing and prospective business relationships and decreasing competition in the relevant product and technology markets.

166. Kaneka's statements have injured Plaintiffs in their profession or occupation. Kaneka's actions are therefore so obviously hurtful to Plaintiffs that no proof of their injurious character is required.

167. Kaneka's statements have exposed Plaintiffs to financial injury and have impeached Plaintiffs' honesty, integrity, virtue, and/or reputation

168. Plaintiffs have suffered actual harm or damages as a result of Kaneka's statements, including but not limited to lost sales, lost business opportunities, and damage to Plaintiffs' goodwill and reputation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment in their favor, including:

A.      An award of compensatory and punitive damages in excess of $100 million against Kaneka and in favor of Plaintiffs;

B.      A declaration that ZMC and ZMC-USA have not infringed, and are not infringing, any valid and enforceable claim of the '340 patent;

C.      A declaration that each of the claims of the '340 patent is invalid;

D.      A declaration that the '340 patent is unenforceable, void and of no legal consequence;

E.      An injunction prohibiting Kaneka and its officers, agents, employees and attorneys, and all those persons in active concert or participation with them, from alleging infringement of the '340 patent by ZMC and ZMC-USA, and their customers and distributors;

F.      An injunction prohibiting Kaneka and its officers, agents, employees and attorneys, and all those persons in active concert or participation with them, from stating or implying to ZMC and ZMC-USA's customers and potential customers that ZMC and ZMC-USA have infringed the '340 patent and/or are selling CoQ10 without Kaneka's permission;

G.      That judgment be entered in favor of Plaintiffs, including an Order adjudging and declaring that Kaneka has violated Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2), and awarding to Plaintiffs damages (including costs and reasonable attorneys' fees) and that such damages be trebled;

H.    That judgment be entered in favor of Plaintiffs, including an Order adjudging and declaring that Kaneka has misused the '340 patent, rendering the '340 patent unenforceable;

I.    That judgment be entered in favor of Plaintiffs, including an Order adjudging and declaring that Kaneka is liable for violations of Texas Business & Commercial Code § 15.05(b), Tortious Interference With Prospective Business Relationships, Tortious Interference with Existing Business Relationships, Tortious Interference with Contract,Unfair Competition in Violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)(B), False Advertising in violation of Texas Occupations Code § 101.201, Product Disparagement, Business Disparagement, Defamation, and Libel, and awarding damages to Plaintiffs;

J.    A declaration that this case is an exceptional case pursuant to 35 U.S.C. § 285;

K.    An award of Plaintiffs' reasonable attorneys' fees, costs and expenses; and

L.    Such other and further relief as the Court deems just and proper.


Respectfully submitted,


BY:___s/_____Mark D. Manela_____
Mark D. Manela
State Bar No. 12894500
S.D. Tex. No. 1824
mmanela@mayerbrown.com
Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730
713-238-2645 (telephone)
713-238-4645 (facsimile)

*Of Counsel*

Trenton L. Menning
State Bar No. 24041473
S.D. Tex. No. 934494
tmenning@mayerbrown.com
Quinncy N. McNeal
qmcneal@mayerbrown.com

State Bar No. 24074690
*Admission pending*
Mayer Brown LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002-2730

Gary M. Hnath
*Admitted pro hac vice*
Mayer Brown LLP
ghnath@mayerbrown.com
1999 K Street, N.W
Washington, DC 20006-1101
202-263-3000 (telephone)
202-263-5340 (facsimile)

*Attorney-in-Charge*

ATTORNEYS FOR PLAINTIFFS
ZHEJIANG MEDICINE CO., LTD. and ZMC-
USA L.L.C.

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of September, 2011, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

By: ___/s/ Mark D. Manela_____
             Mark D. Manela