# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ZHEJIANG MEDICINE CO., LTD., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| versus | § | CIVIL ACTION NO. H-11-1052 |
| | § | |
| KANEKA CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## O R D E R

Pending before the Court is Defendant Kaneka Corporation's Motion to Dismiss Plaintiff's First Amended Complaint. (Instrument No. 43).

### I.

This is a patent infringement case concerning U.S. Patent No. 7,910,340 (the "'340 Patent"), a patent which relates to processes for producing coenzyme Q10 ("CoQ10"). Coenzyme Q10 is a chemical compound that can be produced and sold in health supplements and other products. Plaintiffs Zheijiang Medicine Company, Ltd. and ZMC-USA, L.L.C. ("Plaintiffs" or "ZMC") and Defendant Kaneka Corporation ("Defendant" or "Kaneka") both research, develop and sell products containing coenzyme Q10. (Instrument No. 1 at 1-2; Instrument No. 9 at 2; Instrument No. 41 at 1-2). Kaneka owns the '340 Patent. (Instrument No. 41, at 4).

ZMC brought suit against Kaneka on March 21, 2011, and filed a first amended complaint on September 23, 2011. (Instrument Nos. 1, 41). ZMC brings a total of 14 claims against Kaneka. ZMC seeks a declaratory judgment that they are not infringing on the '340 Patent and that the '340 patent is invalid and unenforceable. (Instrument No. 41). ZMC also alleges that Kaneka is engaging in unfair competition and monopolization or attempted monopolization, in violation of the Sherman

Act, Texas Business and Commercial Code, and Lanham Act. In addition, ZMC alleges that Kaneka is tortiously interfering with its contract and business relationships, and is engaging in patent misuse, product and business disparagement, defamation, and libel per se. (Instrument No. 41, at 11-30).

Kaneka filed a motion to dismiss 7 of the 14 claims brought by ZMC on October 11, 2011. (Instrument No. 43). ZMC filed a response on November 1, 2011, and Kaneka filed a reply on November 7, 2011. (Instrument Nos. 56, 58). In addition, on November 1, 2011, ZMC voluntarily dismissed one of the claims at issue in Kaneka's motion to dismiss. (Instrument No. 55). The dismissed claim had asserted false advertising under the Texas Occupations Code. *(See* Instrument No. 41, at 20). Kaneka's motion to dismiss now concerns the following 6 claims: (1) violation of the Sherman Act, 15 U.S.C. § 2; (2) violation of the Texas Business & Commercial Code § 15.05(b); (3) tortious interference with prospective business relationships; (4) tortious interference with existing business relationships; (5) tortious interference with contract; and (6) unfair competition under the Lanham Act, 15 U.S.C. § 1125(A)(1)(B). (Instrument No. 43). Kaneka argues that the six claims should be dismissed for failure to state a claim. Alternatively, Kaneka seeks an order that ZMC amend their complaint to provide a more definite statement of the six claims. Kaneka also argues that the fourth claim, for tortious interference with existing business relationships, should be stricken because it is redundant and duplicative of the third claim for tortious interference with prospective business relationships. (Instrument No. 43).

ZMC asserts that it is not infringing upon the '340 patent. ZMC claims that, in bad faith, Kaneka has filed baseless patent infringement lawsuits against ZMC in Germany and California, as well as a baseless complaint of patent infringement with the U.S. International Trade Commission. (Instrument No. 41, at 5, 10). According to ZMC, in the ITC investigation, Kaneka named the

2

majority of oxidized CoQ10 manufacturers, representing in excess of 99% all non-Kaneka manufactured CoQ10. (Id., at 9). ZMC also asserts that, on or about June 17, 2011, June 20, 2011, and July 18, 2011, Kaneka sent at least 156 letters to ZMC's "customers, potential customers, and members of the trade." (Instrument No. 41, at 6-7). The recipients of the letters included "a large number" of the current and former customers of manufacturers named in the ITC investigation. (Id.., at 9). According to ZMC, the letters asserted that ZMC was infringing the '340 patent although Kaneka knew that it had no evidence of infringment. (Id.). The letters were not identical, and existed in multiple versions. (Id.). ZMC claims that, as a result of the letters, "some" of its existing and potential customers have refused to purchase ZMC's products, or have threatened to cease purchasing ZMC's products. (Id.). ZMC further claims that Kaneka sent the letters in bad faith, and that its conduct in sending the letters and filing cases against ZMC amounts to a "campaign" that has caused severe damage to ZMC's business. (Id., at 8-9).

ZMC asserts that, for antitrust purposes, the relevant product market is the market for oxidized CoQ10 products and the relevant geographic market is the United States. (Instrument No. 41, at 9). ZMC also asserts that the relevant technology market is the market for the technology necessary to create oxidized CoQ10 products, and the relevant geographic market is worldwide. According to ZMC, Kaneka is a direct competitor to ZMC in these markets. ZMC claims that Kaneka has achieved, or has a dangerous probability of achieving, monopoly power in the relevant product market and technology market through its "campaign" of instituting baseless patent litigation and of sending customers misleading letters. ZMC alleges that the letters may lead customers into believing that ZMC is infringing on Kaneka's intellectual property, or that ZMC's customers may be subject to legal action or product recalls. (Instrument No. 41, at 9-10). ZMC also claims that that

3

Kaneka's "campaign" has caused or has a dangerous probability of causing existing or potential customers to avoid buying competing CoQ10 products. Finally, ZMC claims that Kaneka's "campaign" has choked off opportunities for producers who use non-infringing technologies and has caused or has a dangerous probability of causing the inhibition of innovation, and the forced exit of non-infringing technologies from the market. (*Id.*).

Kaneka has previously filed a patent infringement suit against ZMC regarding the '340 patent in the Southern District of Texas. The suit was filed on March 22, 2011 as Case No. 11-cv-2250, and was before Judge Lynn Hughes. ZMC asserts that Judge Hughes ordered Kaneka to withdraw the letters that it had sent to ZMC's existing and potential customers on August 22, 2011, after a conference in chambers. (Instrument No. 41, at 8). ZMC further asserts that Kaneka failed to comply with the order, and has not retracted any of the letters. According to ZMC, Kaneka eventually dismissed the case before Judge Hughes on August 25, 2011 in order to avoid having to appear at a hearing to show cause why it should not be found in contempt. (Instrument No. 41, at 8).

## II.

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In analyzing a motion to dismiss for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must please "enough facts to state a claim for relief that is plausible on its face." *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008)(citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S. Ct.

4

1955, 1974, 167 L.Ed.2d 929 (2007)). The complaint must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation". *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Id.* (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 556, 167 L.Ed.2d 929 (2007)).

## III.

At issue are the following 6 claims: (1) violation of the Sherman Act, 15 U.S.C. § 2; (2) violation of the Texas Business & Commercial Code § 15.05(b); (3) tortious interference with prospective business relationships; (4) tortious interference with existing business relationships; (5) tortious interference with contract; and (6) unfair competition under the Lanham Act, 15 U.S.C. § 1125(A)(1)(B). (Instrument No. 43).

## A.

ZMC alleges that Kaneka's actions of filing patent infringement cases against ZMC and sending letters to ZMC's existing and potential customers "constitute monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2." (Instrument No. 41, at 13).

## 1.

The offense of monopoly "has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.* 732 F.2d 480, 487 (5th Cir. 1984) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563-570-71 (1966)). Monopoly power is "the

power to control price or exclude competition." *Id.* (citing *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956)). The possession of monopoly power requires that the defendant dominate the relevant market. *Domed Stadium*, at 489. Market domination may result solely from control of a large share of the market, or from control of some significant part of a market containing characteristics that allow it to be controlled by a participant not having a grossly disproportionate share of it. *Id.* Absent special circumstances, a defendant must have a market share of at least fifty percent before he can be guilty of monopolization. *Id.*

ZMC has identified two relevant markets: the market for oxidized CoQ10 products, and the market for the technology necessary to create oxidized CoQ10 products. However, ZMC has failed to allege that Kaneka has a market share of at least fifty percent of either of these markets. Further, ZMC has failed to make allegations showing that Kaneka controls a significant part of these markets. None of ZMC's allegations regarding Kaneka's "campaign" of baseless litigation and letters to customers show that Kaneka possesses the power to control prices or exclude competition for a significant part of the market. Although ZMC alleges that Kaneka has named the majority of CoQ10 manufacturers, representing over 99% of non-Kaneka manufacturers, in the ITC investigation, this allegation falls short of showing that Kaneka possesses power over a significant part of the market. In addition, ZMC's allegation that "some" of its existing and potential customers have refused to purchase ZMC's products or have threatened to cease purchasing ZMC's products falls short of showing that Kaneka possesses the power to control prices or exclude competition for a significant part of the market. ZMC has failed to alleged sufficient facts to show the first element of monopolization, that Kaneka possesses monopoly power in the relevant market. Accordingly,

6

Defendant's motion to dismiss ZMC's claim for monopolization under the Sherman Act is GRANTED.

**2.**

The offense of attempted monopolization has three elements: (1) the defendant engaged in predatory or exclusionary conduct, (2) the defendant had a specific intent to monopolize, and (3) there was a dangerous probability that the defendant would successfully attain monopoly power. *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (5th Cir. 2000).   A dangerous probability of success can be shown if the defendant has a significant share of the market. *Domed Stadium*, at 490. If a defendant does not have a significant market share, other factors such as concentration of market, high barriers to entry, consumer demand, strength of the competition, or consolidation trends in the market may support a claim for attempted monopolization.  *Id.*  A bare allegation that there is a dangerous probability that the defendant will successfully attain monopoly power is insufficient to support a claim for attempted monopolization. *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F.Supp. 1544, 1553 (S.D.Tex. 1991).

ZMC claims that Kaneka has a dangerous probability of successful monopolization. However, ZMC has failed to allege that Kaneka has a specific share, let alone a significant share, of the relevant CoQ10 product or technology markets.  ZMC has also failed to allege facts concerning high barriers to entry, consumer demand, the strength of the competition, or consolidation trends in the relevant markets. ZMC has therefore failed to allege sufficient facts to support the third element of attempted monopolization, that there was a dangerous possibility possibility that the defendant would succcessfully attain monopoly power.  Accordingly, Defendant's motion to dismiss ZMC's claim for attempted monopolization under the Sherman Act is GRANTED.

7

For the above reasons, Defendant's motion to dismiss ZMC's claim for a violation of Section 2 of the Sherman Act is GRANTED.

**B.**

ZMC alleges that Kaneka's conduct "constitute[s] monopolization and/or attempted monopolization in violation of Texas Business & Commercial Code § 15.05(b)." (Instrument No. 41, at 13). This section of the Texas Business  & Commercial Code is part of the Texas Free Enterprise and Antitrust Act of 1983, and is "construed in harmony with federal judicial interpretations of comparable federal antitrust statutes." TEX.BUS.&COM.CODE §§ 15.01, 15.04. Section 15.05(b) of the Texas Free Enterprise and Antitrust Act of 1983 is comparable to to Section 2 of the Sherman Antitrust Act. *Caller-Times Pub. Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992); *Star Tobacco Inc. v. Darilek*, 298 F.Supp.2d 436, 440-41 (E.D.Tex. 2003). Claims pled under Section 15.05(b) must therefore establish the same elements required under Section 2 of the Sherman Act. *Id.* As found above, ZMC has failed to allege sufficient facts to show monopolization and/or attempted monopolization under Section 2 of the Sherman Act. Likewise, ZMC has failed to allege suffficient facts to show monopolization and/or attempted monopolization under Section 15.05(b) of the Texas Business & Commercial Code. Accordingly, Defendant's motion to dismiss ZMC's claim for a violation of Section 15.05(b) of the Texas Business & Commercial Code is GRANTED.

**C.**

ZMC alleges that Kaneka's conduct constitutes tortious interference with prospective business relationships, tortious interference with existing business relationships, and tortious interference with contract.

8

1.

The elements of tortious interference with a prospective business relationship are: (1) a reasonable probability that the plaintiff would have entered into a contractual or business relationship with a third party; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from being formed; (3) the defendant's act was committed with a conscious desire to prevent formation of the relationship; and (4) actual harm or damage resulted from the defendant's interference. *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex.App.–Waco, 2006); *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex.App.–Houston [1st Dist.] 2006); *see also Apani Southwest*, at 634 (recognizing that Texas appellate courts identify the first element of tortious interference with a prospective relationship as a reasonable probability that the plaintiff would have entered into a *contractual* relationship with a third party, or a reasonable probability that the plaintiff would have entered into a *business* relationship with a third party).

In order to establish tortious interference with a prospective business relationship, the plaintiff must identify clients with which it would have done business but for the defendant's conduct. *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 676 (S.D.Tex. 2010). A general allegation that the defendant has interfered with the prospective relationships between the plaintiff and its customers "does not allow the court to infer that [the defendant] has interfered with any specific prospective contract or client relationship." *ThermoTek, Inc. v. WMI Enterprises, LLC*, 2011 Wl 1485421 at *8 (N.D.Tex. 2011). ZMC alleges that, as a result of the 156 letters that Kaneka sent to ZMC's existing and potential customers, "some" of ZMC's existing and potential customers have refused to purchase ZMC's products and/or threatened to cease purchasing ZMC's products. (Instrument No. 41, at 7). This allegation does not identify clients with which ZMC would

9

have done business but for Kaneka's conduct. Further, the use of the word "some" does not allow the Court to infer that Kaneka has interfered with any specific prospective contract or client relationship. ZMC has failed to state a claim for tortious interference with prospective business relationships. Therefore, Defendant's motion to dismiss ZMC's claim for tortious interference with prospective business relationships is GRANTED.

2.

The Parties dispute whether tortious interference with existing business relationships exists as an independent claim, or whether it is the same claim as tortious interference with prospective relationships. Kaneka argues that the two claims are the same, and that the claim for tortious interference with existing business relationships should be stricken as redundant. However, Kaneka fails to cite any cases in which a claim for tortious interference with existing business relationships has been stricken as redundant. On the other hand, ZMC argues that the two are distinct claims, and cites a Fifth Circuit case, *Apani Southwest, Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 634 (5th Cir. 2002), in which the Fifth Circuit treats tortious interference with prospective business relationships and tortious interference with existing business relationships as distinct claims with different elements. The Court therefore declines to strike ZMC's claim for tortious interference with existing business relationships as redundant.

To prevail on a claim of tortious interference with business relations, a plaintiff must prove (1) the existence or prospect of a contract, (2) an intentional and willful act interfering with the contract that was calculated to cause damages to the plaintiff, and (3) damages. *Kiepfer v. Beller*, 944 F.2d 1213, 1220 (5th Cir. 1991). Here, ZMC has failed to allege facts sufficient to show the existence or prospect of a contract. As discussed above, ZMC alleges that Kaneka's letters caused

10

"some" of ZMC's existing and potential customers to refuse to purchase ZMC's products, or to threaten to cease purchasing ZMC's products. However, the use of the word "some" does not allow the Court to infer that Kaneka has interfered with any specific existing or potential contracts. ZMC has failed to state a claim for tortious interference with existing business relationships. Therefore, Defendant's motion to dismiss ZMC's claim for tortious interference with existing business relationships is GRANTED.

### 3.

The elements of tortious interference with contract are: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss has occurred. *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008). In *Staton Holdings, Inc. v. Russell Athletic, Inc.*, 2009 WL 4016117 at *5 (N.D.Tex. Nov. 20, 2009), the district court dismissed the plaintiff's claim for tortious interference with contract because "Staton [the plaintiff] must plead facts that identify a specific customer with whom it had a specific contract with which Rusell [the defendant] interfered." *Id.* Here, ZMC, like the plaintiff in *Staton Holdings*, has failed to plead facts that identify a specific customer with whom it had a specific contract with which Kaneak interfered. Although ZMC alleges that "some" of its customers refused to purchase ZMC's products because of Kaneka's letters, the use of the word "some" does not identify ZMC's customers or their contracts with any specificity. ZMC has failed to allege facts sufficient to establish that a contract subject to interference exists, and has therefore failed to state a claim for tortious interference with contract. Defendant's motion to dismiss ZMC's claim for tortious interference with contract is GRANTED.

11

### D.

Finally, ZMC alleges that Kaneka has engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), by sending false and misleading letters to ZMC's existing and potential customers, and by refusing to retract the letters.  ZMC alleges that Kaneka's actions were made in bad faith, and that the letters falsely asserted that ZMC was infringing the '340 patent.

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, provides in relevant part:

> Any person who ... in commercial advertising or promotion, misrepresents the nature, characteristics, quality, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).  The Fifth Circuit has adopted the definition of "commercial advertising or promotion" set foth in *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1534 (S.D.N.Y. 1997).  *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996).  Under the *Gordon & Breach* definition,

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up*, at 1384 (citing *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F.Supp. 1521, 1534 (S.D.N.Y. 1997)).

Kaneka argues that ZMC's claim under Section 43(a) of the Lanham Act should be dismissed because letters to another party's customers do not constitute false or misleading advertising or promotion that is actionable under the Lanham Act. In support, Kaneka cites a Seventh Circuit case, *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (5th Cir. 2003). In *ISI Int'l*, the Seventh Circuit held that "letters sent to customers do not come within the scope of § 43(a)(1)(B) - which is limited to false or misleading 'commercial advertising or promotion'." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 733 (5th Cir. 2003)(citing *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800 (7th Cir. 2001)). The Seventh Circuit arrived at this holding without applying the *Gordon & Breach* definition of "commercial advertising or promotion." *Id.*; *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). The Fifth Circuit has not addressed the holding in *ISI Int'l*. However, district courts in other circuits have split on whether to adopt the Seventh Circuit's rule concerning letters sent to customers. *Compare, e.g., M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 2007 WL 979854 at * 16 (D.N.J. Mar. 30, 2007) (following *ISI Int'l* in holding that letters to customers were not actionable commercial advertising or promotion under the Lanham Act) *with Carpenter Tech. v. Allegheny Tech.*, 646 F.Supp.2d 726, 737 n.9 (E.D.Pa. 2009) (declining to follow *ISI Int'l* and finding letters to customers actionable under the Lanham Act); *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 2007 WL 704511 at *3 (D.Ariz. Mar. 5, 2007)(finding letters to customers actionable under the Lanham Act); *Infection Prevention Techs., LLC v. UVAS, LLC.*, 2011 WL 4360007 at *22-23 (declining to follow the *ISI Int'l* holding and instead finding that the defendant's letters to customers were not actionable because the plaintiff failed to alleged that the letters significantly penetrated the relevant market). The Court here joins the district courts in the Third and Ninth Circuits that have declined to follow the *ISI Int'l*

13

rule regarding letters to customers. The Court further finds that the *ISI Int'l* rule is inappropriate in the Fifth Circuit because it does not apply the *Gordon & Breach* definition of "commercial adverstising or promotion" that has been adopted by the Fifth Circuit.

ZMC argues that Kaneka's letters meet the *Gordon & Breach* definition of commercial advertising or promotion. Taking ZMC's allegations as true, the letters were sent by Kaneka, ZMC's competitor. The letters also asserted that Kaneka was infringing upon ZMC's patent, and therefore support the inference that Kaneka sent them to influence customers to buy Kaneka's rather than ZMC's products. Further, the letters were sent to 156 existing or potential customers, which constituted a majority of the non-Kaneka cutomers for CoQ10. Although the letters were not a classic advertising campaign, these allegations are sufficient to meet the *Gordon & Breach* elements of (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services, that was (4) disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. Accordingly, Kaneka's motion to dismiss ZMC's claim under section 43(a) of the Lanham Act is DENIED.

## E.

In the event that Kaneka's motion to dismiss is denied, Kaneka seeks an order that ZMC be required to amend its complaint to to provide a more definite statement of ZMC's claims. ZMC opposes this alternative request on the ground that ZMC's pleading provides more than adequate notice of its claims.

ZMC has already amended its complaint once.  In light of this fact, and ZMC's opposition to an opportunity to amend its complaint, the Court DENIES Kaneka's alternative motion to provide a motion for a more definite statement.

### IV.

For the above reasons, Defendant's motion to dismiss is **GRANTED in part and DENIED in part.  (Instrument No. 43).**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the _____ day of August, 2012, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**